CENTRAL TRUST CO., TRUSTEE, *v.* BEDINGHAUS, ET AL.

[Cite as Central Trust Co., Trustee, v. Bedinghaus, 8 Ohio Misc. 183.]

(No. 2572—Decided September 1, 1965.)

WILL CONSTRUCTION: Hamilton County Probate Court.

*Messrs. Nichols, Wood, Marx & Ginter* and *Mr. John J. Luhrman*, for plaintiff.
*Mr. R. T. Dickerson*, for defendants Joseph E. Maxwell Estate and Heirs of James Maxwell.
*Messrs. Freiden, Hoy & Barstow*, for defendant Margaret Sebree Gettle.

DAVIES, J.   The Central Trust Company, as trustee of a trust created under the will of James Maxwell, deceased, has filed a petition for the construction of said decedent's will which, after making a number of bequests, provides, in Item IX, for

the aforementioned trust of the decedent's residuary estate, which said item, in part, reads as follows:

"I direct that my trustees shall hold in trust my residuary estate during the lifetime of my wife, Viola Maxwell, and shall pay the net income therefrom to her in as nearly as possible equal quarterly installments, or if my trustees prefer, in monthly installments. In case my trustees or the survivor of their successor or successors are of the opinion that it would be for the benefit of my said wife to have the whole or any part of the principal of my estate at any time, and she requests that the principal be paid to her, they shall have the authority to pay her all or such part of the principal from time to time as seems to them best in their uncontrolled discretion. The purpose of this clause is to provide my said wife with adequate means for her comfort and support, but the trustees shall not be responsible to determine whether any payments of the principal are necessary for her comfort and support.

"Upon the death of my said wife my trustees shall then distribute all of my residuary estate remaining in their hands as follows: The income therefrom shall be used by my trustees for the support and maintenance of my son, Jamex (sic) Maxwell, and shall be paid at such times and in such amounts as may seem proper to my trustees in their uncontrolled discretion. Any amount of net income remaining at the end of each year and not necessary for the support and maintenance of my son, James Maxwell, shall be equally distributed between my son, Joseph Maxwell, and my niece, Margaret Sebree Gettle.

"Upon the death of my son, James Maxwell, my wife and my son, James both being dead, my trustees shall then distribute all of my residuary estate remaining in their hands as follows:

"One-half to my niece, Mrs. Margaret Sebree Gettle, of Mt. Healthy, Ohio; one-fourth to my granddaughter, Edythe May Maxwell, and the remaining one-fourth to my son, Joseph Maxwell, if then living, and if my son, Joseph Maxwell, shall not be living at such time, said one fourth shall be added to the one fourth heretofore directed to be paid in such event to my granddaughter, Edythe May Maxwell. If Mrs. Margaret Sebree Gettle shall not survive the death of my wife and my son, James, then (my wife, my son, James, and my niece Mrs. Margaret Sebree Gettle being dead) my residuary estate remaining

in the hands of my trustees shall be divided equally between my son, Joseph, and my granddaughter, Edythe May Maxwell, provided they are both living at such time. If neither my niece, Mrs. Margaret Sebree Gettle, nor my granddaughter, Edythe May Maxwell, shall survive the death of my wife and my son, James, then (my wife, my son, James, my niece, Mrs. Margaret Sebree Gettle and my granddaughter, Edythe May Maxwell, all being dead) all of my residuary estate remaining in the hands of my trustees shall be paid to my son, Joseph, provided he shall survive such event. If neither my son, Joseph, nor my granddaughter, Edythe May Maxwell, shall survive the death of my wife, and my son, James, then (my wife, my sons, James and Joseph, and my granddaughter all being dead), all of my residuary estate remaining in the hands of my trustees shall be paid to my niece, Mrs. Margaret Sebree Gettle, provided she shall survive such event. If my son, Joseph and my niece Mrs. Margaret Sebree Gettle, shall not survive the death of my wife, and my son, James, then (my wife, my sons, James and Joseph, and my niece all being dead), all of my residuary estate remaining in the hands of my trustees shall be paid to by granddaughter, Edythe May Maxwell, provided she shall survive such event and if she shall not survive such event, then my said residuary estate remaining in the hands of my trustees shall be paid to my heirs at law.''

James Maxwell's will was executed on May 9, 1939, and he died on November 6, 1943. His wife, Viola, survived him and received the income from the trust until her death in 1950.

The testator's sons, James Maxwell and Joseph Maxwell, and his niece, Margaret Sebree Gettle, also survived both the testator and his surviving spouse, Viola. Joseph Maxwell died on December 14, 1964, survived by three grandchildren, Irene R. Bedinghaus, Joseph Maxwell Reinhardt, and Deborah Lynne Reinhardt. The son, James, the niece, Margaret, and the three grandchildren of Joseph are still alive.

After the death of the testator's wife, Viola, in 1950, the trustee, under the terms of the will, used the trust income for the support and maintenance of the son, James Maxwell, and distributed certain sums of the income not necessary for James' support equally between the son, Joseph, and the niece, Margaret.

When Joseph E. Maxwell died on December 14, 1964, the trustee had on hand "income" totalling $4,457.24 which was not necessary for the support of the son, James.

The trustee has asked the court for directions in making distribution of said amount and in making future income distributions.

The following statement, which summarizes decisions in many Ohio cases dealing with the construction of wills, is found in 56 Ohio Jurisprudence, Wills, 2d 46, Section 519, *et seq.*: "The cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator, which has been variously declared to be the paramount rule, the primary guide, the sole guide, the guiding spirit, the controlling object, the prime purpose, the fundamental rule, and the polar star. This intention will be followed unless the testator attempts to make a disposition contrary to some rule of law or public policy. To that end all rules of construction are to be followed only as they are such aids to a determination of that intention, and no rule, however sanctioned by usage, may be applied to a thwarting of the testator's intention." (Section 521): "The intention of a testator must be ascertained from the language used in the will, as applied to the subject matter and read in the light of circumstances surrounding its execution. * * *. The question always in the mind of the court must be not what the testator should have done, but what did he do, and what he meant by the words which he actually employed. If the language of a will is plain, and the meaning obvious, the court cannot qualify or control the language by conjecture or doubt arising from extraneous facts. The testator must be presumed to have meant what he said. * * * ."

In the case of *Townsend's Ex'rs* v. *Townsend*, 25 Ohio St. 477, the Supreme Court held that "In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator. Such intention must be ascertained from the words contained in the will. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear from the context that they were used by the testator in some secondary sense. All the parts of the will must be construed together, and effect, if possible, given to every word con-

tained in it. If a dispute arises as to the identity of any person or thing named in the will, extrinsic facts may be resorted to, in so far as they can be made ancillary to the right interpretation of the testator's words, but for no other purpose.''

It will be noted that after the death of the testator's wife, the trustee was directed to use the income from the trust for the support and maintenance of the son, James, at such times and in such amounts ''as may seem proper'' to the trustees in their uncontrolled discretion. The will then provides that ''any amount of net income remaining at the end of each year and not necessary for the support and maintenance of my son, James Maxwell, shall be equally distributed between my son, Joseph Maxwell, and my niece, Margaret Sebree Gettle.'' Although the will specifically provides what distribution of the residuary estate shall be made upon the death of the testator's wife and his son, James, the will does not provide what distribution shall be made of the net income remaining each year and not necessary for the support and maintenance of the son, James, in the event the son, Joseph, or the niece, Margaret, dies after the wife, Viola, and prior to the death of the son, James.

Attorneys for the estate of Joseph Maxwell, deceased, and his heirs, his three grandchildren (the children of his deceased daughter), Irene R. Bedinghaus, Joseph Maxwell Reinhardt and Deborah Lynne Reinhardt, contend that the said three grandchildren, after the death of Joseph Maxwell, and until the death of James Maxwell, are entitled to one-half of the net income remaining at the end of each year and not necessary for the support and maintenance of James Maxwell because of the provisions of Section 2107.52, Revised Code, which (since October 1, 1953) provides that when a devise of real or personal estate is made to a ''relative'' (when the testator James Maxwell died the section, then Section 10504-73, General Code, read a ''child or other relative'') of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as the devisee would have done if he had survived the testator.

Counsel argue that the provision in James Maxwell's will that ''any amount of net income remaining at the end of each year and not necessary for the support and maintenance of my son, James Maxwell, shall be equally distributed between my

son, Joseph Maxwell, and my niece, Margaret Sebree Gettle,'' constitutes a ''devise'' under the provisions of said Section 2107.52, Revised Code, and that when Joseph Maxwell died, prior to James Maxwell, Joseph Maxwell's issue, his three grandchilden, take ''the estate devised,'' one-half of the net income remaining at the end of each year not necessary for the support and maintenance of James Maxwell. Counsel also argue that Joseph Maxwell's estate is entitled to one-half of the $4,457.24, which was the amount of income remaining at the end of the year 1964 which was not necessary for the support and maintenance of James Maxwell.

In the case of *Ohio National Bank of Columbus, Gdn.,* v. *Harris,* 126 Ohio St. 360, the court, in considering the provisions of the Ohio anti-lapse statute, Section 10504-73, General Code (now Section 2107.52, Revised Code), held as follows: ''A testator, in an item of his will, devised his residuary estate to his five children, such devise being followed by clauses providing for two contingencies: One, that in case any of his children 'shall die leaving issue,' the share of the deceased should go to the issue; and the other, that in case any of his children 'shall die leaving no issue,' the share of the deceased should be divided among his remaining children. *Held:* the clauses in such item of the will, relating to a devisee dying leaving issue or dying leaving no issue, are to be construed as referable to the death of the first taker devisee. Since, in his will, the testator did not use language limiting the first taker's death within a period prior to his own, but used general terms in alluding to the first taker's death, the natural import of the words so used connotes death of the first taker at any time. The rule of construction is not changed by the fact that the testator, after the death of the first taker, devised his residuary estate to others upon two contingencies, the one contingency based on the first taker dying leaving issue, and the other on his dying leaving no issue; for the testator's intention clearly indicates where his residuary estate was to pass upon the happening of either event.'' On page 364 of the opinion, the court specifically stated that ''The lapse statute applies to children not surviving the testator.''

Since Joseph Maxwell did survive his father, the testator,

Section 2107.52, Revised Code, has no application in the James Maxwell estate.

Counsel for Margaret Sebree Gettle claim that the court should construe the testator's will so that all of the excess income for the year 1964 and in subsequent years during the life of James Maxwell should be paid to Margaret Sebree Gettle, because of the following holding of the court in the case of *Enyeart* v. *Driver*, 93 Ohio App. 500: "A devise providing, inter alia, 'I give, devise and bequeath to my son * * * and my daughter * * * my farm * * * for the term of their natural lives, and at their death said lands shall descend to my nearest blood descendants if any are living,' creates a single life tenancy in the whole of the property to be enjoyed by the son and daughter until the death of one, and, thereafter, to be enjoyed by the survivor." In this case, the devisees were life tenants who received land for the term of their natural lives. The court (p. 502) reasoned as follows: "It is reasonably clear that the testatrix expected one of her children to survive the other, and that the survivor would be entitled to the life estate in the whole. In truth, only one life tenancy was created, which terminates upon the death of the survivor. The life tenancy is to be enjoyed by two persons until the death of one, and thereafter, it is to be enjoyed by the survivor in the whole of the property. This construction is in accord with the manifest intention of the testatrix."

Other cases cited in the various briefs of the parties involved cases in which the devisees were life tenants. No Ohio case was cited or found which provided for income payments to individuals for the life of another person. Courts in other jurisdictions have considered many such cases. We will cite some of them.

In the case of *Hussey* v. *Hussey* (Mass.), 83 N. E. 2d 159, the court considered a case in which the trustees under the will of Elsie M. West brought a petition for instructions as to the payment of two tenths of the income of the trust property. The will gave the residue of the estate to the trustees to pay the balance of the net income, "eight tenths" to Pauline H. Hussey for her life and "two tenths" in equal shares to Rosamond Clifford and Margaret Santer (neither of whom is related to the testa-

trix) or the survivor of them during the life of Pauline H. Hussey. Upon the death of Pauline H. Hussey, the corpus of the trust estate was to pass, one third to George Hussey, Jr., one third to Charles Morgan Hussey, and the other one third ultimately to St. Luke's Hospital. Rosamond Clifford died on April 20, 1944, and Margaret Santer died on December 27, 1946. No disposition of two tenths of the income, after the death of Margaret Santer and until the death of Pauline H. Hussey was made expressly by the terms of the will. George Hussey, Jr., and Charles Morgan Hussey disclaimed any interest in the two tenths of the income. The competing claimants of that income were St. Luke's Hospital and the executor of the will of Margaret Santer, deceased.

The court, after considering a number of applicable cases, cited in the opinion, held that "a testator is presumed to have intended to dispose of all his property by will. Where annuity or payment of income under will to testator's descendant or other beneficiary is not limited in terms to beneficiary's life, but is limited to some other lawful period of time, before expiration of which beneficiary dies, his personal representative is entitled to income for remainder of such period. Under will, giving residue of testatrix' estate to trustees for payment of eight-tenths of net income to named woman for her life and two-tenths in equal shares of two other women, unrelated to testatrix, or survivor of them, during life tenant's life, and providing that corpus should pass on her death to certain hospital and two named men, who disclaimed any interest in such two-tenths of income after death of last of two beneficiaries thereof, such share of income until life tenant's death did not pass to testatrix' estate as intestate property, though not expressly disposed of by will, nor to such hospital, but passed to executor of will of such last beneficiary."

In *United States Trust Co. of New York* v. *Boshkoff, et al.,* 148 Maine 134, 90 A. 2d 713, the testator provided that the residuum of his estate should be held in trust during the life of his wife with part of the income therefrom to be paid to named relatives. One of the income beneficiaries died before the wife and the question arose as to what disposition should be made of the income provided for such deceased relative from the time of his decease and the decease of the testator's relict. The court

pointed out that the only condition imposed by the testator was that the named relatives be alive at the testator's death and there was no indication that the testator required that they continue to live as long as the widow because the testator provided that the income should be paid *during the life of the widow* to the named beneficiaries. The court held that "in the case of a bequest of income from trust to several persons by name, to be divided among them equally, the legatees take as tenants in common and not as joint tenants, and in the case of the death of a legatee before termination of the trust, the income must be paid to the legal representatives of the estate of the deceased legatee."

In the case of *In re Byles' Estate*, 282 N. Y. Supp. 905, the court held that "under will creating trust and providing for use of income, so far as necessary, for support of testator's wife for life, with remainder over, and giving surplus income to five designated persons, on death of donee of surplus income before wife's death, deceased donee's share of surplus income passed to her personal representatives."

In 112 A. L. R. 585, a long list of cases are cited to suport the following statement: "It may be stated as a general rule, also, that in the absence of evidence of an intention to the contrary a vested gift of income to be paid to a named beneficiary for a definite or ascertainable period of time is not divested by the beneficiary's death before the termination of the period prescribed for the payments, but the income accruing after the beneficiary's death becomes part of his estate during the remainder of the period."

We believe that the decisions made by the courts in the preceding cases dealing with questions concerning income payments to be made after a beneficiary's death until the termination of an ascertainable period of time stipulated in testamentary trusts are sound.

While James Maxwell carefully outlined what distribution should be made of his residuary estate remaining in the hands of his trustees "upon the death of my son, James Maxwell, my wife and my son, James both being dead," and provided for almost every other circumstance that could happen during the continuation of the trust created under his will, he did not indicate what his intention would be concerning the distribution

of any amount of net income remaining at the end of each year and not necessary for the support and maintenance of his son, James Maxwell, in the event that either his son, Joseph, or his niece, Margaret, should die before the son James, as the son, Joseph, did.

We find that when the testator, James Maxwell, provided in his will that after his wife's death the net income from his trust estate remaining at the end of each year and not necessary for the support and maintenance of his son, James Maxwell, should be equally distributed between his son, Joseph Maxwell, and his niece, Margaret Sebree Gettle, and further provided that upon the death of his son, James Maxwell, the trustees should distribute the trust estate as set forth in the will, the son, Joseph Maxwell and the niece, Margaret Sebree Gettle became tenants in common, had an undivided one-half vested interest in, and each one of them was entitled to receive, one half of the said net income not necessary for the support and maintenance of his son, James Maxwell, and upon the death of testator's son, Joseph Maxwell, the one half of the said net income to which the said Joseph Maxwell was entitled became, and will continue to be, a part of Joseph Maxwell's estate until the death of the son, James Maxwell.

*Judgment accordingly.*